## MACDONALD v. SHEPARD and others.

(Circuit Court, D. Massachusetts. October 15, 1880.)

1. PATENT No. 155,534, dated September 29, 1874, claiming, as a new article of manufacture, a skirt protector for ladies' dresses, having a fluted or plaited border, bound with or composed of enamelled cloth, or other water-proof material, sustained.

2. SAME—INFRINGEMENT—EVIDENCE.—The proof of infringement in this case *held* sufficient, in the absence of contradiction.

In Equity.

Complainant, pro se, and Benj. F. Butler, for complainant.

E. N. Dickerson and J. S. Holmes, for defendants.

LOWELL, C. J. The plaintiff's patent, No. 155,534, dated September 29, 1874, claims, as a new article of manufacture, a skirt protector for ladies' dresses, having a fluted or plaited border, bound with or composed of enamelled cloth, or other water-proof material. As originally granted, it was for a skirt "facing or protector," but the facing was disclaimed in November, 1874. The records of the interference case with one Chase, and of the case in this court before my predecessor, are made part of this record.

In the interference, (6 O. G. 359,) the commissioner decided in favor of the patentee, and said, among other things: "Macdonald made this invention in 1861, and between that time and 1865 she attached water-proof skirt protectors to four of her own dresses. Short dresses became fashionable in 1865, and therefore nothing more was done with this invention until the year 1872, when long dresses were again the style, and Macdonald then commenced experimenting, preparatory to filing an application for a patent."

He afterwards says that an attempt has been made in argument to confound skirt facings with skirt protectors. "These articles," he rejoins, "are entirely distinct in form, and are used for a different purpose. Enamelled cloth has been used for the former, but there is nothing in the record to show that it has been used for protectors." He then refers to the patent of Lucinda Humphrey, and finds that oil-cloth,

which is described by her, could not be used for a protector operating like plaintiff's; and, as to Mackey's patent, he says it is for a facing which only extends to the edge of the skirt, and that braid is the protector to Mackey's skirt. He then considers the plea of abandonment and decides against it.

The grounds, then, upon which the patent was granted were, an invention earlier than Chase's, namely, in 1861; that it had not been abandoned; and that it was not anticipated by a skirt "facing" which extended only to the bottom of the dress and was bound in with it by a piece of braid.

It is, undoubtedly, true that the discrimination between a protector and a facing had not been made in common speech at the time of this decision. Facings are protectors, in a broad sense, and they were called so before protectors, in the sense of the patent and disclaimer, had come into use. The commissioner found that enamelled cloth was used for facings of skirts before Miss Macdonald made her invention. He might have added that they were called "protectors;" but since strips of water-proof material have been used to hang below the skirt and braid to protect both, the name is more generally applied, as the office applied it, to this latter article.

Judge Shepley's decision agrees entirely with that of Mr. Leggett, though whether he had the latter opinion before him I do not know. In *Macdonald* v. *Blackmar,* 9 O. G. 746, he says: "I see no reason to doubt that she (Miss Macdonald) was the first and original inventor of this article, as distinguished from a skirt facing, which is an entirely different article, and from a skirt protector, which, being made of wigan or similar material, was substantially useless for the purpose as compared with the complainant's invention."

Judge Blatchford has found, upon a preliminary hearing by affidavits, that the date fixed by the commisioner for the plaintiff's invention was rightly fixed. He also agrees with me that the invention includes a plain as well as a fluted or plaited form of water-proof skirt protector. 18 O. G. 193. This is a somewhat nice question of construction, but I still think it the better opinion.

The evidence in this case brings out very clearly that

enamelled cloth was used for protecting skirts a long time ago, and perhaps before 1861; but it is not proved to my satisfaction that it was used as a protector in the present sense. I think it was probably made into facings. The evidence of the witnesses who sold it is not, and could not well be, very distinct upon this point, as they were none of them women or dress-makers. This case does not vary substantially from the facts proved or taken for granted before the commissioner and before the late circuit judge, unless the evidence of the complainant herself in cross-examination will have that effect.

The complainant, in her anxiety to prove that the Morrison "protector," which was a strip of enamelled cloth, sold for the purpose of protecting skirts, was used as a facing, and not as a protector in the more recent sense, has sworn that enamelled cloth of that sort would not be useful as a protector, because it would show its white or non-enamelled side below the dress, and because its edge would fray, and that this was the only enamelled cloth to be had in the market in 1861 and long after. "If this be so," say the defendants, in substance, "how can you maintain that you invented this thing by the use of such cloth in 1861?" I think the answer to this argument is that the plaintiff has always insisted that her use of the invention before 1865 was experimental. So strongly was this put by her in the *Blackmar Case*, that the defendants argued that she had experimented without success, and had abandoned her supposed invention. Judge Shepley found, as the commissioners had found, that there was no abandonment. Of course, if the invention was put into public use in 1861, the patent is void; but this point was not taken before the commissioner or before Judge Shepley. The patentee's account of it is that she took some pains to correct the defects of the old enamelled cloth, but did not fully reach a satisfactory result until she had some cloth specially prepared for her after she had, as the commissioner says, resumed her experiments in 1872.

It is always ground for suspicion and scrutiny that a patentee with one breath carries back his invention, and with the next declares it to have been so incomplete that his use

was only experimental. This is what the plaintiff does, and what the office and Judge Shepley appear to decide that she is entitled to do. I am not prepared to dissent from this conclusion.

The only evidence of infringement is from the plaintiff herself, who produces a strip of water-proof cloth with a strip of India rubber sewed to its lower edge, which she swears is exactly what she has seen sold by the defendants, as and for skirt protectors. This appears to me a sufficient proof of infringement in the absence of contradiction.

Decree for the complainant.